UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VICTORIA D., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )  No. 2:24-cv-00180-KFW |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

## MEMORANDUM DECISION[1]

The Plaintiff in this Social Security Disability appeal seeks remand on the bases that the Administrative Law Judge (ALJ) (1) erroneously evaluated medical opinion evidence of record and her subjective-symptom testimony in determining her residual functional capacity (RFC) and (2) failed to resolve an apparent conflict between the hearing testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). *See* Plaintiff's Brief (ECF No. 10) at 1. For the following reasons, I discern no error and affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in January 2019. *See* Record at 173-74. After her claim was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* at 88-91, 93-96, 113. That hearing took place in March 2020, *see id.* at 29-86, after which the ALJ issued an unfavorable decision

---

[1] The parties have consented to me presiding over all proceedings in this action including the entry of judgment. *See* Declaration Regarding Consent (ECF No. 9).

1

finding that the Plaintiff was not disabled during the relevant period, *see id.* at 13-23. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, following which she appealed to this Court. *See id.* at 1-3, 1018-19. At the Commissioner's request, this Court remanded the case for further proceedings, and the Appeals Council then remanded the case to the ALJ. *See id.* at 1020-21, 1026-27. The remand hearing took place in February 2023, *see id.* at 955-91, following which the ALJ issued a decision finding that the Plaintiff, during the relevant period, suffered from the severe impairments of degenerative disk disease, depressive disorder, anxiety disorder, and an eating disorder, *see id.* at 841. Considering those impairments, the ALJ found that the Plaintiff had the RFC to perform light work except that she could occasionally lift and carry twenty pounds and frequently carry ten pounds; could frequently climb, stoop, crouch, crawl, and bounce; could perform simple and repetitive one-to-three step tasks; could engage in occasional contact with coworkers, supervisors, and the public; could not complete tasks with fast-paced production requirements; needed to work independently with no close-knit or tandem work; and could adapt to routine workplace changes. *See id.* at 843. The ALJ found that the Plaintiff could not have performed any past relevant work but that she could have performed other jobs existing in significant numbers in the national economy and was thus not disabled from January 1, 1999, her alleged disability onset date, through September 30, 2004, her date last insured. *See id.* at 847-49. The Plaintiff filed exceptions to the ALJ's decision with the Appeals Council, which declined to

2

assume jurisdiction; hence, the ALJ's May 2023 decision is the Commissioner's final determination after remand.  *See id.* at 828-30; 20 C.F.R. §§ 404.981, 404.984(b)(2).

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).  If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result.  *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).  But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

The Plaintiff first contends that in determining her RFC, the ALJ erroneously evaluated her subjective-symptom testimony as well as the medical opinions of testifying independent medical expert Ira H. Hymoff, Ph.D., and treating provider Tara Pelletier, D.O.  *See* Plaintiff's Brief at 9-13.

Dr. Hymoff testified, in relevant part, that the Plaintiff could not work under "timed production standards," could not work as part of a "close knit" team, and could only occasionally interact with coworkers, supervisors, and the public (though this

3

social restriction would limit her on an unpredictable basis). Record at 979-81. The ALJ ultimately found Dr. Hymoff's opinion "reasonable and persuasive." *Id.* at 846.

The Plaintiff argues that the ALJ inaccurately altered the no "timed production standards" limitation Dr. Hymoff assessed by changing it to a "lesser limitation" of no "fast-paced production requirements" in a hypothetical posed to the VE at hearing. Plaintiff's Brief at 10; *see* Record at 987. This error is not harmless, the Plaintiff contends, because an inability to perform jobs with "timed production requirements," a limitation unqualified by speed or pace, "may well have been inconsistent" with an ability to perform the jobs identified by the VE and adopted by the ALJ. Plaintiff's Brief at 10. The Plaintiff argues without support that the jobs the VE identified, like "most unskilled occupations in competitive employment," are "likely to involve 'timed production requirements.'" *Id.*

However, the Plaintiff cites no authority to support a material difference between "timed production standards" and "fast-paced production requirements," and even if I assume that the ALJ erred in making that translation, the Plaintiff similarly fails to establish that it resulted in prejudice. *See id.* at 10-11. This is also precisely the type of concern that the Plaintiff's counsel is expected to explore with the VE at hearing instead of reserving "such matters to technical challenges before the courts." *Fallon v. Soc. Sec. Admin. Comm'r*, No. 1:10–cv–00058–JAW, 2011 WL 167039, at *9 (D. Me. Jan. 14, 2011) (rec. dec.), *aff'd*, 2011 WL 703590 (D. Me. Feb. 18, 2011).

The Plaintiff further contends that the ALJ failed to incorporate into the RFC Dr. Hymoff's opinion that her ability to occasionally interact with others was

4

unpredictable or explain why he rejected that portion of testimony. *See* Plaintiff's Brief at 11-12. The error is harmful, the Plaintiff insists, because the VE testified that someone with the Plaintiff's RFC could not perform the jobs that the VE identified and the ALJ adopted if they were "unpredictably unable to interact appropriately with their supervisors and their co-workers for basically two-thirds of the workday," whereas "occasional is one-third." *Id.* at 12; Record at 990.

To the contrary, the ALJ thoroughly considered Dr. Hymoff's opinion about the unpredictable nature of the Plaintiff's social limitations, *see* Record at 844-46, 981, and then found, consistent with the VE's testimony, that the Plaintiff would not be precluded from performing the identified representative occupations even if she were unpredictably unable to occasionally interact with others, *see id.* at 849, 989; *see also* 20 C.F.R. § 416.945(a)(1) (defining RFC as "the most [a Plaintiff] can still do despite [their] limitations").

Moreover, the Plaintiff's suggestion that her ability to "occasionally" interact with others means that she could only interact with others one-third of the workday and, conversely, that she would be unable to interact with others the other two-thirds of the workday, is based on a flawed premise. "[T]he DOT definition" of the word "occasional" "does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert various amounts of physical force." *Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) (citing Appendix C, § III to DOT, 1991 WL 688702) (highlighting how illogical it would be to interpret "occasional interaction" to mean that a claimant would be required to interact with

5

others for "up to two hours and forty minutes out of an eight-hour workday"). Accordingly, there is no merit to Plaintiff's attempt to undermine the ALJ's Step 5 findings by pointing to the VE's testimony about a hypothetical person who could not interact with others for a full two-thirds of the workday—as the ALJ noted, the Plaintiff's "framing and line of questioning" to the VE on this issue "obfuscated the premise" of being limited to occasional interactions with others. *See* Record at 849.

The Plaintiff also challenges the ALJ's evaluation of Dr. Pelletier's written opinion statements, which the ALJ acknowledged at hearing were consistent with a finding of disability. *See id.* at 802-12, 988; Plaintiff's Brief at 12-13. Dr. Pelletier did not begin treating the Plaintiff until she started practicing medicine at Intermed in 2006, where the Plaintiff was already an established patient. *See* Record at 802, 846, 958. The ALJ found Dr. Pelletier's opinion unpersuasive "through the date last insured and in subsequent years when the [Plaintiff] was not engaged in regular treatment" because she did not personally treat the Plaintiff during the alleged disability period—January 1, 1999, through September 30, 2004—or provide medical documents to address that time span, and she herself stated that it was "difficult to estimate an onset" because the Plaintiff's "emotional trauma from home/marriage was ongoing or continuous until separation and divorce." *Id.* at 846. The ALJ also found Dr. Pelletier's more restrictive assessment of the Plaintiff's functional limitations inconsistent with the opinion of Dr. Hymoff—who had reviewed all of the available, relevant medical records from the alleged period of disability—that the Plaintiff was only moderately limited during that earlier period overall. *See id.*

6

The Plaintiff contends that ALJ erred because "the premise that the opportunity to review [the Plaintiff's earlier] records distinguished" Dr. Pelletier's opinion from that of Dr. Hymoff—which she alleges is the sole reason the ALJ rejected Dr. Pelletier's opinion—is unfounded. Plaintiff's Brief at 13. In support of this point, the Plaintiff notes that Dr. Pelletier was offered copies of the earlier records but did not indicate that she needed them, and instead attached a summary of the Plaintiff's treatment history at Intermed to her opinion statements and referenced her knowledge of those records as a basis for her opinion.[2] *See id*; Record at 802-27.

This argument is unavailing. The ALJ plainly found Dr. Pelletier's opinion unpersuasive for reasons beyond its inconsistency with the functional limitations Dr. Hymoff assessed. *See id.* at 846; 20 C.F.R. § 404.1520c(c)(2) (stating that a medical opinion's persuasiveness is relative to its consistency with other record evidence). The ALJ also considered Dr. Pelletier's explanation of her difficulty pinpointing the onset date for her assessed limitations, *see id.* § 404.1520c(c)(1), her treatment relationship with the Plaintiff, *see id.* § 404.1520c(c)(3), and her familiarity with the evidence relevant to the Plaintiff's claim, *see id.* 404.1520c(c)(5). Thus, as the Commissioner correctly points out, the Plaintiff's argument essentially asks the Court to intrude upon the ALJ's role by "reweigh[ing] the relative value of the opinions based on the evidence Dr. Pelletier considered." Commissioner's Brief (ECF No. 14) at 8; *see also Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *5 (D. Me. Dec. 17, 2020) (rec. dec.) ("That the record could

---

[2] Notably, the treatment history Dr. Pelletier attached to her opinion statements reflects that the Plaintiff was first seen in 2008, well after the alleged disability period ended. *See* Record at 813-27.

arguably support a different conclusion does not entitle [a claimant] to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein."), *aff'd*, 2021 WL 66609 (D. Me. Jan. 7, 2021).

Next, the Plaintiff alleges that the ALJ overemphasized the objective medical evidence of record and, correspondingly, neglected to properly consider her testimony, in evaluating her subjective-symptom reports.[3] *See* Plaintiff's Brief at 13-16; *see also* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("If [an ALJ] cannot make a [fully favorable] decision . . . based solely on objective medical evidence, then [the ALJ] carefully consider[s] other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms . . . includ[ing] statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.").

The Plaintiff's argument on this point neglects to consider the record as a whole and once again improperly asks the Court to reweigh the evidence. *See Becky K. G.*, 2020 WL 7418974, at *5; *see also West v. Berryhill*, No. 17-1170, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) ("[T]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings."). The

---

[3] The Plaintiff offhandedly notes that both Dr. Hymoff and the ALJ referenced her daily activities as a "homemaker/parent" during the alleged disability period and advises that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Plaintiff's Brief at 14 (quoting *Sacilowski v. Saul*, 959 F.3d 431, 440 (1st Cir. 2020)). But the Plaintiff does not contend that such a result occurred in this case; thus, the argument is waived for being undeveloped. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

ALJ found that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence. *See* Record at 844. In reaching that determination, the ALJ considered the Plaintiff's testimony about being a homemaker and raising children while experiencing spousal abuse that impacted her mental and physical health. *See id.* The ALJ also considered the Plaintiff's physical examination findings and that she attended weekly therapy to combat the impact of her abuse but was ultimately hospitalized for an eating disorder and prescribed medication to treat her mental health symptoms. *See id.*

Finally, the Plaintiff claims that the ALJ's Step 5 finding is unsupported by substantial evidence because the ALJ failed to resolve an apparent conflict between the DOT and the VE testimony that he relied upon in determining the Plaintiff's RFC. *See* Plaintiff's Brief at 16-18. The ALJ found that an individual with the Plaintiff's RFC could perform at least three representative occupations—collator operator, DOT No. 208.685-010, router, DOT No. 222.587-038, and silver wrapper, DOT No. 318.687-018—all of which fall within level two of the DOT General Educational Development (GED) reasoning spectrum. *See* Record at 848; Appendix C, § III to DOT, 1991 WL 688702. The Plaintiff insists that an apparent conflict exists between the VE's testimony and the DOT because a limitation to "one to three step tasks" rules out GED reasoning level two occupations. *See* Plaintiff's Brief at 17; Record at 843.

Social Security Ruling (SSR) 00-4p affirmatively obligates ALJs to "(i) inquire whether there is any conflict between VE testimony and the DOT, (ii) elicit a

9

reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Sharon W. v. Kijakazi*, 2:21-cv-00287-NT, 2022 WL 2751645, at *4 (D. Me. July 14, 2022) (rec. dec.) (cleaned up), *aff'd*, 2022 WL 3042984 (D. Me. Aug. 1, 2022). However, "because SSR 00–4p pertains only to *apparent* conflicts, a [plaintiff] waives a claim of failure to identify and resolve a conflict between [VE] testimony and the DOT unless [they] can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." *Welch v. Astrue*, No. 1:11–cv–384–GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012) (rec. dec.) (cleaned up), *aff'd*, 2012 WL 3113144 (D. Me. July 31, 2012).

No such apparent conflict exists here. The DOT does not dictate a maximum number of steps for tasks in GED reasoning level two jobs. Appendix C, § III to DOT, 1991 WL 688702. While the DOT states that such jobs might require individuals to "[d]eal with problems involving a few concrete variables in or from standardized situations," it does not specify how many steps are considered "standardized." *Id.* Consequently, a job involving "a few concrete variables," *id.*, may well involve "one to three step tasks," Record at 843, and such a limitation is therefore not in clear conflict with GED reasoning level two occupations, *see Fallon*, 2011 WL 167039, at *9.

In fact, a number of courts have held that a limitation to one-to-three step tasks is not inconsistent with GED level two reasoning jobs. *See, e.g.*, *Surprise v. Saul*, 968 F.3d 658, 662-63 (7th Cir. 2020) (finding "no conflict, obvious or otherwise," between GED reasoning level two jobs and a limitation to one-to-three step instructions). While a limitation to one-to-two step instructions fits soundly within

10

the definition of GED reasoning level one occupations, *see* Appendix C, § III to DOT, 1991 WL 688702, one-to-three step tasks inherently require a higher mental ability that "appears to be precisely within the scope" of GED reasoning level two, *Ryan Y. v. O'Malley*, No. 23-540-PAS, 2024 WL 3329755, at *8 (D.R.I. July 8, 2024).[4]

Here, the VE supplied three representative occupations in response to the ALJ's hypothetical and, critically, testified that his response was consistent with the DOT. *See* Record at 987-88. That testimony constitutes substantial evidence to support the ALJ's Step 5 finding. Moreover, even if there is a question about whether an individual with the Plaintiff's RFC is capable of performing a particular GED reasoning level two job, the Plaintiff was represented at hearing and the ALJ permitted her counsel to question the VE, but the Plaintiff's counsel neither identified nor inquired about any conflicts. *See id.* at 988-90. Once again, counsel is expected to "explore these concerns with the [VE] at hearing, not leave such matters to technical challenges before the courts." *Fallon*, 2011 WL 167039, at *9. Because any conflict, if one existed, was not apparent, SSR 00-4p does not require remand.

### IV. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

Dated: March 10, 2025                     /s/ Karen Frink Wolf
                                          United States Magistrate Judge

---

[4] The Plaintiff's reliance on *Linwood C.* is misplaced. *See* Plaintiff's Brief at 17-18 (citing *Linwood C. v. Kijakazi*, 1:22-cv-00013-LEW, 2022 WL 10337867, at *4 (D. Me. Oct. 18, 2022) (rec. dec.), *aff'd*, 2022 WL 17454017 (D. Me. Dec. 6, 2022)). In that case, this Court held that a limitation to "tasks with 'short' instructions" conflicted with GED reasoning level two, which involves "'detailed' (i.e., longer) instructions." *Linwood C.*, 2022 WL 10337867, at *4. Importantly, the case did not discuss tasks in terms of the number of steps involved, which is the pivotal issue here. *See Surprise*, 968 F.3d at 663 (rejecting an analogous case on the same ground).